IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| KENNETH MICHAEL GRAHAM,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN & YOUTH SERVICES, JOHN BOUT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:26-CV-00344-MJH |

**MEMORANDUM OPINION**

On March 2, 2026, Plaintiff, Kenneth Michael Graham, filed a Complaint, alleging constitutional violations under 42 U.S.C. § 1983 against Defendants Lawrence County, Lawrence County Children and Youth Services, and John Bout, Director of Lawrence County Children and Youth Services. (ECF No. 1). Mr. Graham brings Fourteenth Amendment substantive and procedural due process claims against all Defendants. (*Id.*). On March 23, 2026, Defendants filed a Motion to Dismiss and accompanying brief. (ECF Nos. 6 & 7). Therein, Defendants argue that Mr. Graham's claims are time barred by the applicable statute of limitations, and that Mr. Graham fails to allege sufficient facts to establish any of his claims. (*Id.*). On April 13, 2026, Mr. Graham filed his Response in Opposition to Defendants' Motion to Dismiss. (ECF No. 9). On April 20, 2026, Defendants filed their Reply. (ECF No. 10). All issues

are briefed and ripe for disposition. For the reasons below, Defendants' Motion to Dismiss will be granted.

## I. Statement of Facts

Mr. Graham has three children. (ECF No. 1, at ¶ 14). Mr. Graham alleges that in July 2021, Lawrence County Children and Youth Services ("LCCYS") removed his children from his care, "without a judge's signed order and without the existence of any exigent circumstances." (*Id.* ¶ 16). The subsequent dependency proceedings regarding Mr. Graham's children continued for over four years. Mr. Graham alleges that LCCYS failed to provide him with a shelter care hearing within 72 hours of his children's removal, as required by 42 Pa. C.S. § 6332. (*Id.* ¶ 17). Mr. Graham pleads that Defendants failed to properly investigate the allegations made against him before removing his children, (*Id.* ¶ 19), blocked him from receiving any medical updates about the children, (*Id.* ¶ 21), failed to provide recordings of the children's dependency hearings (*Id.* ¶ 22), and refused to docket filings submitted by Mr. Graham. (*Id.* ¶ 23). Mr. Graham further alleges that LCCYS "withheld visitation and contact for more that forty-four months, despite court orders requiring therapeutic visitation and reunification services." (*Id.* ¶ 28). Mr. Graham attributes these actions to LCCYS and Lawrence County, alleging that Lawrence County has a policy or custom that pushes for adoption of children in state custody instead of reunification with their parents. (*Id.* ¶ 26). Mr. Graham also alleges that an involuntary termination petition filed against him was dismissed on November 13, 2023, because LCCYS failed to meet the requisite burden of proof. (*Id.* ¶ 31). Mr. Graham alleges that his children were returned to his custody in December 2025. (*Id.* ¶ 35). Mr. Graham alleges that, upon his children's return, he discovered that "LCCYS and its agents had systematically neglected the children's medical needs during their forty-four months in foster care." (*Id.*).

Defendants provide context to the facts alleged by Mr. Graham, citing to the dependency proceedings record.[1] LCCYS initiated an investigation into Mr. Graham after allegations made that the children had dental issues and the parents were using drugs. (ECF No. 7-1, at 1-5). After visits by LCCYS case workers to Mr. Graham's home, LCCYS remained concerned that Mr. Graham and the children's mother were in fact using drugs. Mr. Graham and the children's mother were ordered to provide a hair follicle drug test to the state court overseeing the children's dependency hearings. (ECF No. 7-1, at 12). According to a Permanency Review Order dates July 22, 2021, Mr. Graham and the children's mother did not submit to the court-ordered hair follicle drug test, and the children were ordered to be removed from Mr. Graham's custody the same day. (*Id.* at 16-17).

## II. Relevant Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[1] The Court is permitted to take notice of publicly available dockets in determining whether or not a pleading has stated a claim. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that a court may take judicial notice of the record from previous court proceedings). The Court notes that it is also intimately aware of the factual circumstances of this case because of the related case brought by the children's mother, at 2:25-cv-00303-MJH.

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6)

motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

## III. Discussion

### A. LCCYS as Improper Party

Defendants argue that LCCYS should be dismissed as a Defendant, because they are a subunit of Lawrence County and are not a proper party in this action. (ECF No. 9, at 5). Mr. Graham does not respond to this argument.

Offices or departments of a county are not properly "persons" capable of being sued under § 1983, because they are arms of their respective political subdivisions. *See Kirk v. Caulfield*, 2022 WL 19406593, at *3 (W.D. Pa. May 17, 2022). For the purposes of § 1983 liability, courts within the Third Circuit have frequently treated a municipality and its agencies as a single entity. *See Taylor v. Pennsylvania*, 2018 WL 6574187, at * 6 (M.D. Pa. Dec. 12, 2018). The Second Amended Complaint does not establish that LCCYS is a separate legal entity from Lawrence County. Based upon the allegations, LCCYS is a subunit of Lawrence County and thus not considered a "person" for purposes of § 1983 liability. Accordingly, Defendants' Motion to Dismiss will be granted to the extent that it seeks claims against LCCYS. LCCYS will be dismissed as a party.

### B. Statute of Limitations for § 1983 Claims

Mr. Graham brings constitutional claims under § 1983 against Defendants. (ECF No. 1). Defendants argue that all of Mr. Graham's claims are barred by the applicable statute of

limitations. (ECF No. 7, at 13). Mr. Graham responds, arguing that the statute of limitations for his claims is tolled by the continuing violations doctrine. (ECF No 9, at 5-7).

Constitutional claims brought under § 1983 are subject to a two-year statute of limitations period. "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir.2009). The limitations period for a § 1983 action is the limitations period for personal injury torts in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387, (2007). Pennsylvania has a two-year statute of limitations. *See Kach*, 589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). A claim accrues for statute of limitations purposes "when a plaintiff has a complete and present cause of action, that is, when [she] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Accordingly, a statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [her] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The accrual period for his § 1983 claims, that are based upon the removal of his children, began the date when his children were removed. *Daniels v. Harper*, 2024 WL 580874, at * 4 (E.D. Pa. Feb. 13, 2024) (citing *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009.")).

Mr. Graham contends that the continuing violations doctrine applies in this case to toll the statute of limitations period related to his constitutional claims. The continuing violation doctrine provides an exception to the "strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." *Foster*

*v. Morris*, 208 F. App'x 174, 177– 78 (3d Cir. 2006) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). The doctrine only applies when the alleged wrong "'is more than the occurrence of isolated or sporadic acts.'" *Id.* (quoting *Cowell*, 263 F.3d at 292). The following factors are to be considered in making this determination:

> (1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292 (citations omitted). "The consideration of 'degree of permanence' is the most important of the factors." *Id.* If an act has a degree of permanence, then continuing violations doctrine is not a substitute for a plaintiff's "awareness of and duty to assert his/her rights" in a timely fashion. *Id.* at 295.

It is well-settled that the continuing violations doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a claim]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 154 (3d Cir. 1998) (quoting *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)). The Third Circuit has considered the continuing violations doctrine in the context of constitutional claims related to the removal of children, and has held that the removal of the child triggers plaintiff's awareness of their ability to bring suit. *See Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009."); *Moore v. Morrison*, 2022 WL 824102, at *5 (E.D. Pa. Mar. 18, 2022) (dismissing § 1983 claims as time-barred where the

"amended complaint makes clear on its face that the plaintiffs knew at the time in January 2017 that their children were initially removed from their care;" and thus, "their claims related to the removal of their children started accruing at that time"); *Samantha M. v. Stepanik*, 2020 WL 1250116, at *5 (W.D. Pa. Feb. 4, 2020).

The July 22, 2021, removal of Mr. Graham's children from his physical custody was an act that had an immediate degree of permanence. Any allegations that Mr. Graham makes against Defendants, related to the dependency hearings, investigations, or interactions which relate to his children's removal started accruing from the July 21, 2021 date of removal. Mr. Graham does not plead any facts to show that the continuing violations doctrine applies to any such claim, because his children were only removed once. Any constitutional claims against Defendants, unrelated to Mr. Graham's children's removal, are their own contained claims which are also subject to the two-year statute of limitations.

Mr. Graham filed his Complaint on March 2, 2026. Thus, the two-year statute of limitations period will preclude any claims for conduct before March 2, 2024. Accordingly, all of Mr. Graham's pre-March 2, 2024 claims within his Complaint are time barred by the statute of limitations. Defendants' Motion to Dismiss will be granted. All of Mr. Graham's pre-March 2, 2024 claims will be dismissed.

**C. Insufficient Pleadings**

Defendants argue that Mr. Graham fails to allege facts to establish any of his constitutional claims. Mr. Graham argues that he pleads sufficient facts to establish his constitutional claims against all Defendants.

All of Mr. Graham's post-March 2, 2024 pleadings are broad and unspecific. Of the general allegations pled by Mr. Graham, those that could be considered to have occurred after March 2,

2024 include: (1) that Defendants blocked him from receiving medical updates about his children, (2) that Defendants failed to provide recordings of the children's dependency hearings, and (3) that LCCYS withheld visitation and contact with his children, in violation of court orders. These allegations are not sufficiently particularized to show the time when said conduct occurred, or how each individual Defendant was involved in each alleged § 1983 claim. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

i. Procedural Due Process Claim

Mr. Graham brings a Fourteenth Amendment procedural due process claim against Defendants at Count I of his amended complaint. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). *See Dennis v. Dejong*, 557 F. App'x 112, 116-17 (3d Cir. 2014).

Mr. Graham does not allege any facts to establish that he did not receive the opportunity to be heard at any point during the dependency process regarding his children. Instead, the record supports that Mr. Graham received notice of the dependency hearings and he was present at each proceeding with counsel. *See generally* (ECF No. 7-1). To support his procedural due process claim, Mr. Graham alleges that he was never provided a shelter care hearing within 72 hours of his children's removal, in accordance with 42 Pa.C.S. § 6332. Claims based upon this allegation are untimely and will be dismissed.

As such, Defendants' Motion to Dismiss Mr. Graham's Fourteenth Amendment procedural due process claims against them, at Count I, will be granted. Said claim will be dismissed. As amendment would be futile, Mr. Graham will not be granted leave to amend this claim.

ii. Substantive Due Process Claim

Mr. Graham brings a Fourteenth Amendment substantive due process claim against Defendants at Count II of his amended complaint. To establish a claim for a substantive due process violation, a plaintiff must show that governmental action was “so ill-conceived or malicious that it shocks the conscience.” *Mulholland v. Government County of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013) (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)). In the child welfare context, a plaintiff must prove that the government officials’ actions “exceed both negligence and deliberate indifference and reach a level of gross negligence or arbitrariness that indeed ‘shocks the conscience.’” *Id.* (quoting *Miller*, 174 F.3d at 375-76). Such a claim “requires decision-making by a social worker that is so clearly arbitrary…[that it] can properly be said to ‘shock the conscience.’” *B.S. v. Somerset County Children and Youth Services*, 704 F.3d 250, 268 (3d Cir. 2013). The inquiry is whether there was an objectively reasonable suspicion of abuse justifying the degree of interference with the parents’ rights as the child’s parents. *Croft v. Westmoreland County Children & Youth Serv.*, 103 F.3d 1123, 1125 (3d Cir. 1997).

Mr. Graham’s timely allegations to support his substantive due process claims against Defendants are general and conclusory. Defendants’ unspecific allegations that Defendants delayed reunification efforts and withheld medical assessments do not rise to the level that would “shock the conscience.” Further, Mr. Graham’s allegations also do not allege when or how each Defendant was individually involved in the substantive due process claims he brings. As such, Defendants’ Motion to Dismiss Mr. Graham’s Fourteenth Amendment substantive due process claims will be granted. Said claims will be dismissed. As the Court cannot say that amendment would be futile, Mr. Graham will be granted leave to amend this claim.

iii. *Monell* Liability for Lawrence County

Mr. Graham contends that Lawrence County is liable for all of his alleged constitutional claims pursuant to *Monell v. Dept. of Soc. Servs. of City of New York* 436 U.S. 658 (1978). (ECF No. 9 at 12). Defendants argue that Mr. Graham fails to allege sufficient facts to establish that the constitutional violations occurred because of a county policy or custom. (ECF No. 7, at 7).

Under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), a local government is subject to liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of by the plaintiff. *Id.* If there is no underlying constitutional violation, *Monell* liability cannot exist. *Bridges v. Scranton Sch. Dist.*, 644 F. App'x 72, 178 (3d Cir. 2016). Policy can be adopted when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). A course of conduct is considered a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law. *Id.*

Mr. Graham alleges that Lawrence County had a policy of adoption instead of reunification when it came to child dependency proceedings. Mr. Graham broadly alleges that this policy is what caused Defendants to violate his constitutional rights. As discussed above, Mr. Graham's allegations are broad and conclusory and insufficient to establish any underlying constitutional violations to support *Monell* liability claims against Lawrence County.

As such, Defendants' Motion to Dismiss as to *Monell* liability for Lawrence County, will be granted. For these reasons, and those stated above, Mr. Graham's claims against Lawrence

County, based upon *Monell* liability, will be dismissed. As the Court cannot say that amendment would be futile, Mr. Graham will be granted leave to amend.

**D. Supervisor Liability for Defendant Bout**

Defendants argue that Mr. Graham's constitutional violations against Defendant John Bout, Director of LCCYS, must be dismissed because he fails to allege sufficient facts to show that Defendant Bout was individually involved in any of the alleged claims. (ECF No. 7, at 5-6). Mr. Graham argues that he has established that Defendant Bout was individually involved in his constitutional violations by virtue of his position within LCCYS. (ECF No. 9, at 12-14).

To bring a § 1983 claim, plaintiff must allege facts to show how each defendant was personally involved in the events and occurrences giving rise to each individual claim. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). § 1983 liability "cannot be predicated solely on the operation of respondeat superior." (*Id.*). To impose liability under § 1983, a plaintiff must allege that the defendant personally participated in the alleged constitutional violation or approved of the action. *C.N. v. Ridgewood Board of Education*, 430 F.3d 159, 173 (3d Cir. 2005).

Mr. Graham's pleadings against Defendant Bout broadly allege that Defendant Bout was responsible for "establishing, approving, and enforcing agency policies, practices, and customs," and that he failed to train, supervise, or discipline LCCYS employees. (ECF No. 1, at ¶¶ 6, 55). Such bare and conclusory allegations are not sufficient to establish that Mr. Bout established or approved of any policy or custom that violated his constitutional rights, nor are they sufficient to show that he was individually involved in the underlying constitutional violations.

As such, Defendants' Motion to Dismiss will be granted. All claims against Defendant Bout will be dismissed. As the Court cannot say that amendment would be futile, Mr. Graham will be granted leave to amend his complaint to properly allege facts against Defendant Bout.

## IV. Conclusion

For the reasons above, Defendants' Motion to Dismiss will be granted. A separate order to follow.

DATED: September 1, 2026

BY THE COURT:

Marilyn J. Horan
United States District Judge